**The Honorable Kathryn S. LEWIS, Appellant,**

v.

**PHILADELPHIA NEWSPAPERS, INC. t/a Philadelphia Daily News and Dan Geringer Appellee.**

Superior Court of Pennsylvania.

Argued May 6, 2003.
Filed Sept. 18, 2003.

Geoffrey R. Johnson, Philadelphia, for appellant.

Amy B. Ginensky, Philadelphia, for appellees.

Before: DEL SOLE, P.J., JOHNSON, and BECK, JJ.

JOHNSON, J.

¶ 1 The Honorable Kathryn Streeter Lewis (Lewis) appeals the trial court's order granting summary judgment in favor of defendants Philadelphia Newspapers, Inc., and Dan Geringer (collectively "PNI"). Lewis, who sued the defendants for defamation, asserts that the trial court erred in granting judgment because it failed to consider a "provably false" statement PNI made in the first of three articles Geringer wrote that appeared in the Philadelphia Daily News. Upon review, we conclude that the statement in question does not establish grounds for a claim of defamation by a public official. Accordingly, we affirm the trial court's order.

¶ 2 Lewis is an elected judge of the Court of Common Pleas of Philadelphia County who, at the time of these events, was assigned to the criminal division of that court. The claims at issue here arise out of a case over which Lewis presided in her official capacity, designated *Commonwealth v. Carlton Bryant*. In that case, Bryant had pled guilty to charges filed following seven separate armed robberies, but later withdrew his plea and elected to go to trial. Approximately five months after Bryant's plea withdrawal, the matter had not come to trial and, on December 2, 1998, Bryant filed a motion for release pursuant to Pennsylvania's prompt trial rule, then numbered Rule 1100. In response to the motion, Lewis determined that the Commonwealth failed to bring Bryant to trial within 120 days of the date on which he had withdrawn his earlier guilty plea and concluded accordingly that Bryant was entitled to release under the Rule. Lewis then ordered Bryant released from custody subject to electronic monitoring pending a trial date scheduled for February 1, 1999.

¶ 3 On February 25, 1999, PNI published the first in a series of three newspaper articles in the Philadelphia Daily News reporting on events subsequent to Bryant's release and commenting on Lewis's treatment of Bryant's case. In the first article, entitled "Why Is He On The Lam?," reporter Dan Geringer excoriated Lewis for having released Bryant. Geringer reported that upon release, Bryant promptly cut off the electronic monitor bracelet affixed as a condition of his release and fled. Geringer reported also that Bryant had returned to a clothing store he had previously robbed and again forced the proprietors to empty the cash drawer, threatening to shoot the owner's

wife unless she moved more quickly. Using abrasive and inflammatory language, Geringer suggested that Lewis had failed to do her job and had acted contrary to Rule 1100 in failing to exclude from the run time a period of two weeks attributable to a continuance requested by Bryant's counsel. Geringer's article included the following discussion:

[O]n June 17, 1998, Bryant withdrew his [guilty] plea in front of [Philadelphia Common Pleas Judge Carolyn Engle] Temin.

According to the "prompt trial" Rule 1100, the Commonwealth then had 120 days to bring Bryant to trial.

At a hearing the next day, Common Pleas Judge Patricia McInerney granted a two-week continuance to Bryant so that his defense could decide how to proceed—new guilty plea, jury trial, waiver trial, etc.

At the end of that two weeks the case went to Judge Lewis.

\*    \*    \*    \*    \*    \*

After months of legal wrangling, the Bryant case was about to go to trial when Judge Lewis granted a defense motion to release Bryant from jail because the 120–day "prompt trial" rule had been exceeded—by eight days.

But the prosecutor pointed out that Lewis'[s] calculations included those two weeks that Judge McInerney had granted the defense to prepare his case after Bryant withdrew his guilty plea. How could Lewis free a defendant shortly before his trial by holding the Commonwealth responsible for a two-week continuance that was requested by, and granted to, the defendant?

Yesterday, I asked Lewis.

She said that she could not discuss the case except to say, "The rule is clear."

Yes. The rule is clear: "In determining the period for commencement of trial, there shall be excluded ... such period of delay at any stage of the proceedings as results from ... any continuance granted at the request of the defendant or the defendant's attorney."

What's unclear is why Lewis ignored the rule and freed a man charged with seven gunpoint robberies.

The [C]ommonwealth now has 365 days to try Bryant, beginning on the day they catch him.

If they catch him.

And if the next judge he gets is more interested in bringing him to "prompt trial" than in relying on an electronic bracelet to do her job.

Brief for Appellees, Exhibit B.

¶ 4 In two subsequent articles, Geringer revisited the issue of Bryant's recidivism and again castigated Lewis for her role in ordering his release. In the first, published March 17, 1999, Geringer criticized the Philadelphia Bar Association for its endorsement of Lewis for retention and detailed again Lewis's purported dereliction in her treatment of the *Bryant* case. Concerning the Association's endorsement procedures, Geringer mused:

Will the Bar inform voters that Judge Lewis recently let the case of Carlton Bryant, a defendant charged with seven gunpoint robberies, languish in her courtroom for months, then released Bryant from custody because "the Commonwealth"—in this case, Lewis—had violated Bryant's right to a speedy trial?

Naturally, Bryant failed to show up for his trial last month. He's been on the lam ever since.

Will the Bar inform voters that Bryant pled guilty to all seven gunpoint robberies, then changed his mind, withdrew his plea and was able to play the criminal

justice system like a violin because Lewis behaved like a violin by not bringing him to trial?

Brief for Appellees, Exhibit C.

¶ 5 In the third such article, published in the Daily News on May 25, 1999, Geringer again blamed Lewis for the purported violation of Rule 1100 that prompted Bryant's release. As Bryant had then been apprehended, Geringer renewed calls for Lewis to bring him to trial, but expressed open skepticism that she would do so:

> The cops know Bryant's dangerous. The DA knows Bryant's dangerous. The FBI knows Bryant's dangerous. His at-risk victims know Bryant's dangerous.
>
> Isn't it about time that Judge Lewis realized that Bryant's dangerous? Isn't it about time that she held his trial—instead of procrastinating so long that the "speedy trial" clock runs out again, and she gives him yet another chance to point his gun at an innocent victim's heart?

Brief for Appellees, Exhibit D.

¶ 6 In response to the articles, Lewis commenced this action asserting claims of Intentional Defamation and False Light—Invasion of Privacy. Lewis alleged that the foregoing statements, among others, "falsely ascribed to plaintiff improper, unprofessional and illegal conduct, as well as (i) dereliction of her judicial duties, (ii) ignorance of the law, (iii) an abuse of her power as a public official, and (iv) a lack of decency, integrity and responsibility." Lewis charged further that the articles' content was "false and defamatory" and that PNI published the articles "with knowledge of their falsity and/or with a malicious, intentional or reckless disregard for their truth or falsity, and with a malicious, intentional or reckless disregard" for the injury the articles would inflict on the "the good name and reputation of plaintiff."

¶ 7 Following completion of discovery, PNI filed the motion for summary judgment that underlies this appeal. The trial court, the Honorable Isaac Garb specially presiding, concluded that the evidence adduced by Lewis failed to state a *prima facie* case for defamation in view of the plaintiff's status as a public figure. In his Rule 1925(a) Opinion, Judge Garb explained:

> Plaintiff cannot recover in this case because [1] the publications are not false (in which case malice is irrelevant), [2] she has failed to establish on this record that the Defendants are guilty of actual malice as that term is defined in *New York Times v. Sullivan*[, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] ... and *Curran v. Philadelphia Newspapers, Inc.*[, 376 Pa.Super. 508, 546 A.2d 639 (1988)] ... and lastly [3] because the publication was a column or statement of an opinion by the author under circumstances where it does not constitute a libelous statement.

Trial Court Opinion, 9/17/02, at 4. In support of his conclusions, Judge Garb analyzed five quotes that Lewis asserted were defamatory. He did not, however address a sixth quote. Lewis contends that that quote establishes the defamatory character of the communications and so precludes entry of summary judgment. Accordingly, she filed this appeal raising the following questions for our review:

1. Whether the trial court erred in granting summary judgment in favor of defendants where the evidence of record clearly demonstrates the falsity of defendants' defamatory publication?

2. Whether the trial [court] erred in granting summary judgment in favor of defendants where the evi-

dence of record clearly demonstrated that defendants' defamatory publications contained provably false statements of fact and not merely protected opinion?

3. Whether the trial [court] erred in granting summary judgment in favor of defendants where the evidence of record clearly demonstrates the defendants' defamatory publications were published with constitutional malice?

Brief for Appellant at 3.

¶ 8 As illustrated in the foregoing questions, Lewis challenges the trial court's entry of summary judgment, contending that the trial court erred in its evaluation of the evidence supporting her cause of action.

"[A] proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense[.]" Under [Civil] Rule 1035.2(2), "if a defendant is the moving party, he may make the showing necessary to support the entrance of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action." Correspondingly, "[t]he non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party."

*Basile v. H & R Block, Inc.*, 777 A.2d 95, 100–01 (Pa.Super.2001) (citations omitted). Thus, a plaintiff's failure to adduce evidence to substantiate any element of his cause of action entitles the defendant to summary judgment as a matter of law. *See Ertel v. Patriot–News Co.*, 544 Pa. 93, 674 A.2d 1038, 1042 (1996). As with all

questions of law, our scope of review of a trial court's order granting summary judgment is plenary. *See id.* at 1041. Our standard of review is the same as that of the trial court; we must review the record in the light most favorable to the non-moving party granting her the benefit of all reasonable inferences and resolving all doubts in her favor. *See id.* We will reverse the court's order only where the appellant, in this case Lewis, demonstrates that the court abused its discretion or committed legal error. *See Basile*, 777 A.2d at 101.

¶ 9 In this case, the trial court determined that Lewis failed to adduce sufficient evidence to establish, *prima facie*, a cause of action for defamation. On appeal, Lewis contends that the trial court erred in failing to consider the statement in PNI's first article that "the prosecutor pointed out [to Lewis] that Lewis'[s] calculations included those two weeks that Judge McInerney had granted the defense to prepare its case after Bryant withdrew his guilty plea." Brief for Appellant at 19. Lewis asserts that this "key statement" underlies all three of PNI's articles, rendering "each and every one of the claimed defamations against Judge Lewis to be actionable defamations." Brief for Appellant at 20 ("Absent this false statement of fact, all of the defendants' publications assailing Judge Lewis and her decision to release Carlton Bryant are eviscerated."). In discussions of her three questions presented, Lewis argues further that this single statement satisfies each of three controlling elements necessary to her defamation claim. Brief for Appellant at 20, 23, 24. We find Lewis's third question dispositive. Therefore, we restrict our analysis to whether the record at summary judgment was sufficient to avoid summary judgment on the

issue of "actual malice." Brief for Appellant at 23.

¶ 10 In Pennsylvania, the Uniform Single Publication Act ("the Act") prescribes basic elements of the plaintiff's burden of proof in an action for defamation. *See* 42 Pa.C.S. § 8341–8345. Section 8343 provides as follows:

§ **8343. Burden of Proof**

**(a) Burden of plaintiff.**—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

    (1) The defamatory character of the communication.

    (2) Its publication by the defendant.

    (3) Its application to the plaintiff.

    (4) The understanding by the recipient of its defamatory meaning.

    (5) The understanding by the recipient of it as intended to be applied to the plaintiff.

    (6) Special harm resulting to the plaintiff from its publication.

    (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343.

¶ 11 Caselaw prescribes additional elements that arise in relation to the character of the statement, the role of the defendant as a media outlet, or the role of the plaintiff as a public official or public figure. If the statement in question bears on a matter of public concern, or the defendant is a member of the media, First Amendment concerns compel the plaintiff to prove, as an additional element, that the alleged defamatory statement is in fact false. *See Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 777, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986); *see also Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 2, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *Ertel v. Patriot–News Co.,* 544 Pa. 93, 674 A.2d 1038, 1041 (1996). If the plaintiff is a public official or public figure, she must prove also that the defendant, in publishing the offending statement, acted with "actual malice," i.e. "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Curran v. Philadelphia Newspapers, Inc.,* 376 Pa.Super. 508, 546 A.2d 639, 642 (1988) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

¶ 12 "Actual malice" is a fault standard, predicated on the need to protect the public discourse under the First Amendment from the chill that might be fostered by less vigilant limitations on defamation actions brought by public officials.

[T]he stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability or further proliferation. But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones.

*Curran,* 546 A.2d at 643 (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731–32, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). Thus, the actual malice standard, by design, assures "that public debate will not suffer for lack of 'imaginative expression' or 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation." *Milkovich,* 497 U.S. at 2, 110 S.Ct. 2695. "[T]he First Amendment requires that we protect some falsehood in order to protect speech that matters." *Hepps,* 475 U.S. at 778, 106 S.Ct. 1558.

¶ 13 Thus, the "actual malice" standard is a constitutionally mandated safeguard and, as such, must be proven by clear and convincing evidence, the highest standard of proof for civil claims. *See Sprague v. Walter*, 441 Pa.Super. 1, 656 A.2d 890, 904 (1995). Moreover, evidence adduced is not adjudged by an objective standard; rather, "actual malice" must be proven applying a *subjective* standard by evidence "that *the defendant in fact entertained serious doubts as to the truth of his publication.*" *See Curran*, 546 A.2d at 642 (quoting *St. Amant*, 390 U.S. at 731, 88 S.Ct. 1323) (italics in *Curran*, boldface added). This determination may not be left in the realm of the factfinder:

> The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice".

*Curran*, 546 A.2d at 644 (citing *Bose Corp. v. Consumers Union*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)). We have recognized accordingly that the question of "actual malice" is not purely one of fact, but rather may be described as one of "ultimate fact," a "hybrid of evidential fact on the one hand and conclusion of law on the other." *Id.* (quoting *Bose*, 466 U.S. at 510–11, 104 S.Ct. 1949).

¶ 14 Application of these concepts is more difficult than its recitation. *See Curran*, 546 A.2d at 644. "[E]rroneous statement is inevitable in free debate, and ... must be protected if the freedoms of expression are to have the 'breathing space' that they need to survive." *Id.* at 645 (quoting *Hepps v. Philadelphia Newspapers, Inc.*, 506 Pa. 304, 485 A.2d 374, 381 (1984), *rev'd on other grounds, Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986)). To minimize judicial intrusion into this "breathing space," our courts have tended to measure actionable conduct by what the defendant did, as opposed to what it refrained from doing or might have done but omitted to do. *See Fitzpatrick v. Philadelphia Newspapers, Inc.*, 389 Pa.Super. 438, 567 A.2d 684, 689 (1989); *Curran*, 546 A.2d at 648. Thus, while "actual malice" may be shown by circumstantial evidence of events surrounding the publication of the offending statement, that evidence must tend to establish fabrication, or at least that the publisher had "obvious reasons to doubt the veracity of the informant or the veracity of his reports." *Sprague*, 656 A.2d at 904; *see also St. Amant*, 390 U.S. at 732, 88 S.Ct. 1323. Because "actual malice" is a fault standard, it is not shown by the falsity of the statement in and of itself. *See Curran*, 546 A.2d at 642 (quoting *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1091 (3rd Cir.1985) ("Although lack of truthfulness in a statement is a prerequisite to liability in a libel action, mere falsity, without more, is generally not sufficient to establish actual malice.")). Similarly, evidence of ill will or a defendant's desire to harm the plaintiff's reputation, although probative of the defendant's state of mind, without more, does not establish "actual malice." *See Sprague*, 656 A.2d at 906–07 (citing *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)) ("The phrase 'actual malice' is confusing in that it has nothing to do with bad motive or ill will.").

¶ 15 Upon review of the record adduced in opposition to PNI's motion for summary judgment, we find evidence of

"actual malice" substantially lacking. In so stating, we acknowledge that PNI's allegation that the prosecutor reported to Lewis on the disputed two-week continuance at the December 23, 1998 hearing is not substantiated by the record. Nevertheless, the demonstrable falsity of a statement does not establish the publisher's fault, *i.e.*, actual malice, in printing and disseminating it. *See Curran*, 546 A.2d at 642 (quoting *Marcone*, 754 F.2d at 1091). Lewis, in her brief on appeal, argues that Geringer "fabricated" the statement and that he "ignored" reliable materials in the trial court record that contradicted his report. Brief for Appellant at 27. We conclude that these claims are not substantiated by the necessary evidence of subjective intent. The fact that Geringer had, prior to publication, reviewed the trial court record does not, in our view, establish that he acted with any level of fault in reporting what transpired at the December 23 hearing. This evidence is equally consistent with simple negligence, which remains subject to First Amendment protection. *See Curran*, 546 A.2d at 644. It does not establish that he lied, that he had "a high degree of awareness" that the statement was "probably false," or that he "entertained serious doubts as to the truth of his publication." *Sprague*, 656 A.2d at 904 (quoting *Harte–Hanks Communications, Inc.*, 491 U.S. at 667, 109 S.Ct. 2678). Even if a higher degree of journalistic responsibility would have counseled greater care in reporting, "actual malice" is not established. *See Harte–Hanks Communications, Inc.*, 491 U.S. at 666–67, 109 S.Ct. 2678. Consequently, this evidence is insufficient as a matter of law to demonstrate "actual malice" and therefore raises no impediment to summary judgment.

¶ 16 Lewis argues as well that Geringer "intentionally avoided the truth" by refusing to interview the assistant district attorney and public defender assigned to Bryant's case, and that he harbored ill will against her for her participation in an awards dinner at which he had been publicly criticized. Brief for Appellant at 27. These claims, even if capable of substantiation, are equally unavailing. Our Courts have held, and Lewis acknowledges in her appellate brief, that a failure to investigate "will not alone support a finding of actual malice." Brief for Appellant at 26 (quoting *Harte–Hanks Communications, Inc.*, 491 U.S. at 692, 109 S.Ct. 2678). Similarly, claims of ill will, even if substantiated (which Lewis's claim is not) offer only scant persuasive value of "actual malice." *See Sprague*, 656 A.2d at 907 ("[E]vidence of ill will or bad motives will support a finding of actual malice only when combined with other, more substantial evidence of bad faith.").

¶ 17 Although we recognize further that various pieces of circumstantial evidence, when considered together, may combine to raise the inference of fault required by the "actual malice" standard, *see id.* at 907, we cannot conclude that such a combination is present on this record. We determine accordingly that the trial court did not err in granting summary judgment in favor of PNI.

¶ 18 For the foregoing reasons, we affirm the trial court's order granting summary judgment.

¶ 19 Order **AFFIRMED.**