J-A11020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CATHERINE M. DUSMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH O. PADASAK, JR. | : | No. 1746 MDA 2017 |

Appeal from the Order Entered October 11, 2017
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2013-4009

BEFORE: STABILE, J., NICHOLS, J., and PLATT, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED SEPTEMBER 24, 2018**

Appellant Catherine M. Dusman appeals from the order granting Appellee Joseph O. Padasak, Jr.'s motion for summary judgment and dismissing her action against Appellee for defamation and other claims. Appellant asserts that the trial court erred in determining that the record lacked adequate evidence to submit the case to a jury and by improperly weighing evidence to determine that Appellee's communications could not have been interpreted as defamatory. Appellant also claims that the trial court erred in determining that Appellee's statements were not defamatory *per se* and that she had to prove damages. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

During the relevant time frame in the 2012-2013 school year, Appellant was an assistant superintendent in the Chambersburg Area School District (CASD) and Appellee was the superintendent of CASD.[1] Appellant alleges that Appellee had a conversation with three elementary principals who typically reported to Appellant. Appellee indicated that Appellant did not have a current commission as an assistant superintendent and that an audit revealed this fact. Appellee further told the principals that Appellant would not be in a supervisory position until her commission was up to date. Appellee also stated that CASD could be fined and that Appellant could be fired. In addition to his conversation with the principals, Appellant alleges that Appellee made similar statements to the president of the teachers' association and two former assistant superintendents.

Appellant further alleges that Appellant and another CASD administrator had interviewed to become superintendent of Tuscarora School District (TSD). Some time after their interviews, Appellee had a conversation with the school board president of TSD about a project involving standards-based report cards. According to Appellant, both Appellant and the other candidate took credit for the project during their interviews, but Appellee later told the TSD board president that Appellant lied about being in charge of the project.[2]

---

[1] We state the facts in the light most favorable to Appellant.

[2] Phillip Miracle, a former CASD board member, testified at a deposition that a conversation between Appellee and the TSD board president took place.

Appellant initially filed a complaint on August 25, 2014, with the following counts:

> Count 1: Defamation, based upon conversations with the principals, the president of the teachers' association, and the former assistant superintendents.
>
> Count 2: Defamation, based upon the conversation with the TSD school board president.
>
> Count 3: False Light, alleging that Appellee used information about Appellee's lack of commission to cast Appellant in a false light to the principals, the president of the teachers' association, and the former assistant superintendents.
>
> Count 4: Violation of Constitutional Right of Privacy, based upon informing a reporter of details of Appellant's "demotion."[3]
>
> Count 5: Intentional Infliction of Mental Distress, based upon Appellee's allegedly extreme and outrageous conduct that produced anxiety, sleeplessness, high blood pressure, and family strain requiring ongoing medical treatment and medication for Appellant for approximately one year.

*See* Compl., 8/25/14, at 2-7 (unpaginated).

Appellee removed the action to federal court. Appellant then filed an amended complaint to exclude references to federal constitutional rights. In response to Appellee's motion for remand, the district court thereafter held that Appellant's action only implicated state law claims and transferred the matter back to the court of common pleas.

---

[3] In support of count 4, Appellant asserted that Appellee invited a reporter to her mid-year review in February 2013. Appellee took the reporter to lunch immediately after the review and informed the reporter of plans to "demote" Appellant.

Following the transfer from the district court, Appellee filed preliminary objections.[4] The trial court sustained the preliminary objections in part and dismissed count 4 and overruled the preliminary objections as to the remaining counts.[5] Order, 5/21/15.

Appellee filed an answer and new matter, in which he raised the statute of limitations and argued that Appellant's claims are barred by consent and estoppel. Answer and New Matter, 6/16/15, at ¶¶ 42-44. Appellee also raised immunity and the truth of the statements as defenses. *See id.* at ¶¶ 46, 50. Appellant filed a reply to the new matter.

Discovery followed, during which the three principals and two former assistant superintendents submitted affidavits, and Appellant, Appellee, and the TSD board president were deposed. Appellant indicated in her deposition that she suffered damages based upon the "unbelievable treatment" she had endured. Dep. of Catherine M. Dusman, 10/25/16, at 70.

---

[4] Appellee argued that counts 1, 2, 3, and 5 should be dismissed pursuant to Pa.R.C.P. 1028(a)(4) because Appellee had immunity from tort claims. *See* Prelim. Objs., 10/28/14, at ¶ 15. Appellee also asserted that count 4 should be dismissed under Pa.R.C.P. 1028(a)(3) and (a)(4) because the count lacked specificity and sufficiency and monetary damages were unavailable under that claim. *See id.* at ¶¶ 68-70, 75-77.

[5] Appellee attempted to have the order certified as immediately appealable based on his immunity issue, but the trial court declined. *See* Mot. for Certification for an Interlocutory Appeal by Permission, 6/22/15. Appellee thereafter filed a petition for review in the Commonwealth Court, which was denied on September 4, 2015. *See* Order, 9/4/15.

Appellee filed a motion for summary judgment on all remaining counts. In relevant part, Appellee asserted that Appellant failed to establish her defamation claims (counts 1 and 2) because: (1) it was true that Appellant did not have a commission; (2) three principals and two former assistant superintendents did not remember Appellee discussing (a) Appellant's lack of commission was discovered in an audit, (b) Appellant could be fired, or (c) CASD could be fined; (3) there was no evidence regarding a conversation with the teachers' association president other than Appellee admitting he mentioned a lack of commission to her; and (4) the TSD board president indicated that he did not have a conversation with Appellee about Appellant until after the board made its decision to not consider Appellant for the superintendent position. *See* Mem. of Law in Supp. of Mot. for Summ. J., 4/21/17, at 3-4, 6-8. Additionally, Appellee asserted that Appellant failed to establish that she suffered special harm as a result of the publication of the allegedly defamatory statements. *Id.* at 13.

In response, Appellant argued that summary judgment was improper because Appellee relied on affidavits and deposition testimony in contravention of ***Nanty-Glo***.[6] ***See*** Brief in Opp'n to Mot. for Summ. J.,

_____

[6] ***Borough of Nanty-Glo v. American Surety Co. of New York***, 163 A. 523 (Pa. 1932). ***Nanty-Glo*** holds that without more, "testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford a sufficient basis for the entry of summary judgment." ***Larsen v. Philadelphia Newspapers, Inc.***, 602 A.2d 324, 333 (Pa. Super. 1991) (citing ***Nanty-Glo***, 163 A. at 524).

7/10/17, at 2. According to Appellant, genuine issues of material fact existed based on Appellee's admissions that he told others that Appellant "could be fired," even after he knew she would not be fired, as well as Appellee's failure to deny the statements to the two former assistant superintendents and the president of the teachers' association. *Id.* at 4-6. Appellant also noted that that Appellee admitted to having a conversation with the board president of TSD. *Id.* at 5-6. Appellant further argued that she did not have the burden of proving special harm because Appellee's statements were defamatory *per se* and related to her fitness to conduct her profession. *Id.* at 7.

Following oral argument, the trial court granted summary judgment against Appellant as to all remaining counts and dismissed her action. Appellant filed a timely notice of appeal, and Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues on appeal:

1. Whether the trial court erred as a matter of law in determining that the record lacked sufficient evidence such that a jury could find in [Appellant]'s favor, by failing to view the evidence in light most favorable to the non-moving party, and by using third party affidavits to disregard [Appellee]'s admitted statements, which are capable of a defamatory meaning.

2. Whether the trial court usurped the role of the jury by weighing evidence to determine that [Appellee]'s communications could have not have a defamatory meaning.

3. Whether the trial court erred, as a matter of law, by determining that [Appellee]'s statements were not defamatory "*per se*" and that [Appellant] was required to prove actual, special, or general damages, where [Appellee]'s statements imputed shortcomings in [Appellant]'s profession and calling.

Appellant's Brief at 5.[7]

Appellant's first two issues are closely related, and we address them together. Appellant asserts that in Appellee's answer, Appellee "admits [that he told the three principals] that, without a commission, there was a legal question whether [Appellant] could supervise principals and that the school district could possibly be fined because she lacked a commission. These statements are judicial admissions for the purposes of this action[.]" Appellant's Brief at 13. According to Appellant, Appellee "testified that he told these principals that [Appellant] 'could' be fired, not that she 'should' be fired because she lacked a commission. He told the principals this, although he never disclosed a prior decision not to fire her." *Id.* at 14. Appellant also asserts that Appellee did not "specifically admit or deny that he made 'similar' or 'almost identical statements' to [the teachers' association president and the two former assistant principals]." *Id.* at 15 n.1.

According to Appellant,

[t]hat, at the time, [Appellant] had no commission is a fact. No defamation arises out of such a statement alone. However, when [Appellee] stated that there was a legal question whether she could supervise principals and that her employer, the school district, could be fined because of her lack of commission, he defamed her by stating things that were not true. His admission conclusively establishes that [Appellee] published the statements, that the statements applied to [Appellant], and that the recipients knew the statements applied to [Appellant]."

---

[7] Appellant does not challenge the trial court's ruling regarding her claims of false light (count 3) and intentional infliction of mental distress (count 5).

Appellant's Brief at 15 (citing 42 Pa.C.S. § 8343(a)(2), (3), (5)).

Appellant also asserts that the trial court "never examined [Appellee's] statements according to [the] standard [of whether they were capable of defamatory meaning]." *Id.* at 17. "Instead, the trial court immediately used the affidavits produced by [Appellee from the various individuals involved] to assess the impact these statements had on the hearers and how the statements may have injured [Appellant]." *Id.* According to Appellant, the use of these affidavits was insufficient to establish the absence of a genuine issue of material fact under *Nanty-Glo*. *Id.* at 22-24. Essentially, Appellant argues that the trial court failed to analyze whether the character of the communications was defamatory and instead improperly analyzed whether the recipients understood the communications to be defamatory.

Our scope and standard of review following the grant of summary judgment follows:

> A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense. Under Pa.R.C.P. 1035.2(2), if a defendant is the moving party, he may make the showing necessary to support the entrance of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action. Correspondingly, the non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party.
>
> Thus, a plaintiff's failure to adduce evidence to substantiate any element of his cause of action entitles the defendant to summary judgment as a matter of law. As with all questions of law, our scope of review of a trial court's order granting summary

judgment is plenary. Our standard of review is the same as that of the trial court; we must review the record in the light most favorable to the non-moving party granting her the benefit of all reasonable inferences and resolving all doubts in her favor. We will reverse the court's order only where the appellant . . . demonstrates that the court abused its discretion or committed legal error.

*Lewis v. Philadelphia Newspapers, Inc.*, 833 A.2d 185, 190 (Pa. Super. 2003) (citations, brackets, and quotation marks omitted). We may affirm the trial court's ruling on any basis apparent in the record. *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 277 (Pa. Super. 2016).

In a defamation action, the plaintiff has the burden of proof regarding the following elements:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

*Lewis*, 833 A.2d at 191 (citing 42 Pa.C.S. § 8343).

"Whether a communication can be construed to have a defamatory meaning is a question of law for the court to determine." *Cashdollar v. Mercy Hosp. of Pittsburgh*, 595 A.2d 70, 75 (Pa. Super. 1991). A communication is considered to be defamatory

if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession. Additionally, the court should consider the effect the statement would fairly produce, or the impression it would naturally engender, in the minds of average persons among whom it is intended to circulate.

***Constantino v. Univ. of Pittsburgh***, 766 A.2d 1265, 1270 (Pa. Super. 2001) (citations and internal quotation marks omitted). Moreover, "[t]he defendant can defend against an action in defamation by proving that the [allegedly] defamatory communication was true[.]" ***Spain v. Vicente***, 461 A.2d 833, 836 (Pa. Super. 1983) (citing 42 Pa.C.S. § 8343(b)).

***Constantino*** was a defamation case involving letters that alleged that the plaintiff engaged in conduct that made her unfit for her job as a clinical instructor.[8] ***Constantino***, 766 A.2d at 1270. The letters were directed to "a particular audience" whose duties involved evaluating employees in teaching roles. ***Id.*** In affirming the trial court's dismissal of the complaint, based on its assessment that the contents of the letters were incapable of defamatory meaning, this Court stated that "this audience would not as likely be affected by any derogatory inference in the letters as might the public at large." ***Id.*** (citation omitted). Additionally, "while the letters did not specify the precise

---

[8] The plaintiff's conduct included several incidents that were "problematic for the operation of [] inpatient units" in a healthcare facility owned and operated by the University of Pittsburgh Medical Center. ***Constantino***, 766 A.2d at 1267. Additionally, there were "problems with [the plaintiff's] clinical teaching." ***Id.*** We acknowledge ***Constantino*** arose from the procedural posture of a review from an order sustaining preliminary objections, unlike the instant motion for summary judgment. ***Id.***

- 10 -

nature of [the plaintiff's] alleged problems, without rampant speculation nothing in the letters could be considered capable of disgracing [the plaintiff] by lowering her reputation among the letters' recipients or deterring them from associating with her." *Id.* at 1270-71.

By way of background to this claim, Appellee admitted to making most of the statements alleged, but denied making any false statements. *See* Answer and New Matter, 6/16/15, at ¶¶ 6-8, 20.

In paragraph six of his Answer, Appellee admits that

> in October 2012 . . . [Appellee] informed . . . three elementary school principals under the supervision of [Appellant] that an audit had uncovered that [Appellant] did not, at that time, have a Commission from the Pennsylvania Department of Education to serve as an Assistant Superintendent for [CASD]. . . . [Appellee] told the three elementary school principals that because [Appellant] did not have a Commission, . . . there was a legal question as to whether [Appellant] could continue to supervise [them]. [Appellee] told the three elementary principals that [CASD] could possibly be fined because [Appellant] did not have a Commission[.]

*Id.* at ¶ 6. At his deposition, Appellee also admitted to telling the principals that Appellant "could be fired." Dep. of Joseph O. Padasak, Jr., 11/9/16, at 26. Also during his deposition, Appellee clarified that the CASD school board decided to prevent Appellant from supervising the principals until she received an updated commission, that he recalled subsidies being withheld due to certification issues, and that not having a commission could be grounds for dismissal. *Id.* at 24-25, 28-29, 37.

Further, in paragraph seven of his Answer, Appellee states that "[i]t is admitted that [Appellee told former assistant superintendents of CASD] that [Appellant] did not have a Commission to serve as Assistant Superintendent for [CASD]." Answer and New Matter, 6/16/15, at ¶ 7. Likewise, Appellee admits that he told the president of the teachers' association about Appellant's lack of commission. *Id.* at ¶ 8. Appellee also admits that the TSD school board president contacted him. *Id.* at ¶ 20.

Here, Appellee's admitted statements were based on a truthful comment that Appellant did not have a commission and the consequences flowing from that statement. Appellant's arguments that Appellee made false statements regarding whether she could supervise principals legally, whether CASD could be fined, and whether she could be fired are incorrect. Taking Appellant's versions of the statements as accurate, Appellee truthfully expressed the CASD school board's doubt regarding Appellant continuing to supervise the principals. *See* Dep. of Joseph O. Padasak, Jr., 11/9/16, at 37. Additionally, Appellee truthfully stated that CASD could be fined, or more specifically, have subsidies withheld, based on Appellant's lack of a current commission. *See id.* at 24. The fact that Appellant was not fired did not detract from the truth that her lack of commission could be grounds to fire her. *See id.* at 29. Appellant has not cited to any evidence tending to establish a material issue of fact regarding the statements' truthfulness.

Even if the foregoing statements were not truthful, however, their publication was unlikely to produce a negative effect in the audience to which

- 12 -

Appellee published the statements. *See Constantino*, 766 A.2d at 1270. The audience to whom Appellee published information about Appellant was a particular group of people, many of whom needed to know the information to perform their duties. *Id.* at 1270. Here, as in *Constantino*, Appellee's publication of the consequences of Appellant's lack of commission to those with experience with the administrative requirements of a school district provides only a speculative basis for determining that Appellant could have been disgraced. *Id.* at 1270-71. Thus, the statements were not capable of being defamatory.

Appellant also alleges that Appellee stated that she lied about being in charge of the standards-based report cards project. Assuming Appellee made the statement, Appellant does not dispute that such a statement was true. Thus, this statement was also incapable of being defamatory. *Spain v.*, 461 A.2d at 836.

Accordingly, because Appellant failed to establish that Appellee's statements were untrue or possessed defamatory meaning, we discern no basis to disturb the trial court's grant of Appellee's motion for summary judgment. *See* 42 Pa.C.S. § 8343(1); *Cashdollar*, 595 A.2d at 75; *Spain v*, 461 A.2d at 836; *see also Mariner Chestnut Partners*, 152 A.3d at 277. Furthermore, in light of our conclusion based upon matters of law rather than factual disputes, we need not address Appellant's further argument that the trial court improperly considered affidavits in violation of *Nanty-Glo* when

determining whether the recipients of the communication understood the statements to be defamatory.

In her final issue, Appellant argues that the trial court erred by determining that "the absence of evidence of 'special harm' to [Appellant was] a basis for entering summary judgment with respect to the statements relating to her commission." Appellant's Brief at 27. According to Appellant, the trial court erred in determining that Appellant was required to prove actual, special, or general damages because the alleged publication was defamation *per se* that related to her ability to perform in her profession. **Id.** at 28-29 (citing **Agriss v. Roadway Express, Inc.**, 483 A.2d 456, 470 (Pa. Super. 1984)). Appellant also argues that she testified to the damages she suffered, including that in her deposition she stated she was forced to go through "unbelievable treatment." Dep. of Catherine M. Dusman, 10/25/16, at 70.

Although Appellant argues that damages are presumed for *per se* defamation, the Pennsylvania legislature abrogated the common law rule of "presumed damages" when it codified the elements required to recover in a defamation action. **Walker v. Grand Central Sanitation, Inc.**, 634 A.2d 237, 242 (Pa. Super. 1993) (citing 42 Pa.C.S. § 8343)). Indeed, a plaintiff in a slander *per se* case "must show 'general damages': proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both." **Id.** at 242, 244 (adopting Restatement (Second) of

Torts § 621, which provides that proof of actual damage is a requirement for all slander actions).

To the extent Appellant argues that she showed damages in her deposition testimony, her testimony lacked specificity and merely stated in conclusory fashion that she was harmed. *See McCain v. Pennbank*, 549 A.2d 1311, 1313-14 (Pa. Super. 1988) ("unsupported assertions of conclusory accusations cannot create genuine issues of material fact" (citation omitted)). Accordingly, Appellant's failure to present any evidence of damages is an additional reason that her defamation claims fail, as she fails to meet a required element of defamation. *See Lewis*, 833 A.2d at 191 (citing 42 Pa.C.S. § 8343).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2018

- 15 -