J-A16037-19

2019 PA Super 234

| | | |
|---|---|---|
| KUWAIT & GULF LINK TRANSPORT COMPANY, KGL LOGISTICS, & KGL TRANSPORTATION CO. KSCC | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : : | No. 1268 MDA 2018 |
| JOHN DOE (A.K.A. SCOTT WILSON), AGILITY DGS HOLDINGS, INC., AGILITY DEFENSE AND GOVERNMENT SERVICES, INC., AND AGILITY INTERNATIONAL, AND AGILITY PUBLIC WAREHOUSING CO. KSC, AGILITY DGS LOGISTICS SERVICES CO. KSCC, PWC TRANSPORT CO. WLL | : : : : : : : : : : | |

Appeal from the Order Entered July 6, 2018
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2012-1820 Civil Term

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                **FILED AUGUST 01, 2019**

Kuwait & Gulf Link Transport Co., KGL Logistics, and KGL Transportation Co. K.S.C.C. (collectively "KGL") appeal from the July 6, 2018, order entered in the Court of Common Pleas of Cumberland County granting the motion for summary judgment in favor of Agility Public Warehousing Co. K.S.C. ("PWC"), Agility DGS Logistics Services Co. K.S.C.C., PWC Transport Co. WLL., Agility DGS Holdings, Inc., Agility Defense Government Services, Inc., and Agility

_____
\*   Former Justice specially assigned to the Superior Court.

International, Inc. (collectively "Agility"), and "John Doe" (a/k/a "Scott Wilson"). After a careful review, we affirm.

The relevant facts and procedural history have been set forth previously by this Court, in part, as follows:

> KGL is a family of Kuwaiti-based companies that provides shipping, transportation, warehousing, and logistics services to the United States Government in Kuwait and Southeast Asia. Agility is a family of logistics companies, including three of their separate, but wholly owned, subsidiaries that competes with KGL for government contracts.
>
> In February 2011, the United States Government's Defense Logistics Agency ("DLA") awarded a contract to KGL to operate a military storage and distribution depot in Kuwait. On March 10, 2011, Intermarkets Global ("Intermarkets"), a company not related to any party in this matter, protested the award of that contract to KGL. KGL alleges that on March 22, 2011[,] and March 24, 2011, a person under the pseudonym "Scott Wilson" sent two letters ("the Wilson Letters") to contracting officers at the DLA and the United States Army Sustainment Command ("USASC"). The Wilson Letters informed the DLA and the USASC that KGL had violated the Comprehensive Iran Sanctions, Accountability, and Divestment Act ("CISADA") by maintaining business relationships with Iranian entities[, namely Valfajr Shipping, an Iranian shipping company,] and urged them to investigate this issue. The Wilson Letters also contained email chains in support of these allegations. [Specifically, the emails purportedly reported KGL leased a cargo ship to Valfajr Shipping.]
>
> KGL alleges that Intermarkets supplemented its protest of the above-referenced contract with copies of the Wilson Letters, characterizing KGL as an irresponsible contractor. KGL asserts that it sustained losses and costs associated with defending this protest, but that it was able to get the protest dismissed, and that the DLA eventually awarded the contract to KGL. KGL also alleges that it competed for a "Heavy Lift 7" contract from the USASC and that the Wilson Letters affected the award of this contract because the USASC would not give the contract to KGL unless KGL addressed the Wilson Letters and proved that it was a responsible contractor. KGL again contends that it sustained losses and costs associated with addressing the USASC's concerns, but that it was

able to provide the USASC with a satisfactory explanation and that it received the "Heavy Lift 7" contract. [Thus, while KGL admits that the Wilson Letters did not cause them to lose any contracts and they received all contracts on which they bid, KGL alleges that it suffered costs associated with defending itself against bid protests and addressing concerns of the DLA and the USASC.]

On March 21, 2012, KGL filed suit against Agility and "John Doe" alleging liability for defamation, tortious interference with contractual and other business relationships, *respondeat superior*, conspiracy, aiding and abetting, and negligent supervision[, arising out of the two Wilson Letters sent to the U.S. Government.] KGL further alleged, and PWC admitted, that employees of PWC authored the Wilson Letters [using the pseudonym "Scott Wilson"] and were acting within the scope of their employment [for purposes of *respondeat superior* liability. KGL alleged that the allegations in the Wilson Letters were false.]

KGL filed an amended complaint on June 14, 2012. On August 14, 2012[,] and September 4, 2012, Agility filed preliminary objections that the trial court overruled on November 15, 2012[,] and October 19, 2012, respectively. On September 14, 2012, KGL served discovery requests on each known defendant, including interrogatories, requests for production of documents, and requests for admissions, each with the primary purpose of identifying "Scott Wilson." Agility objected to these discovery requests based on its First Amendment right to speak anonymously and on ***Pilchesky v. Gatelli***, 12 A.3d 430 (Pa.Super. 2011), which Agility argued requires KGL to satisfy four requirements before it could obtain discovery identifying an anonymous pseudonymous speaker. On December 4, 2012, KGL moved to strike Agility's objections to discovery requests and to compel discovery responses. [On December 5, 2012, Agility filed separate answers to the amended complaint. They denied liability on several grounds, including that the factual statements in the Wilson Letters were substantially true and, in any event, did not cause any damage to KGL.]

On February 20, 2012, the trial court heard argument on [the December 4, 2012,] motion. Finally, on May 21, 2013, the trial court granted KGL's motion to strike Agility's objections to discovery requests and to compel discovery responses insofar as the objections relate to ***Pilchesky***.

* * *

- 3 -

[T]he trial court granted KGL's motion because it found that **Pilchesky** did not apply to the Wilson Letters. The trial court ruled that the Wilson Letters were commercial speech, as opposed to "literary, religious, or political" speech, and that the First Amendment affords less protection to commercial speech.

Agility…filed [an] appeal.

**Kuwait & Gulf Link Transport Co. v. Doe**, 92 A.3d 41, 43-44 (Pa.Super. 2014) (citations to record omitted).

On appeal, Agility argued the trial court erred in ordering discovery compelling the disclosure of "Scott Wilson's" identity because the First Amendment preserves the right to speak anonymously and pseudonymously. In addressing Agility's issues, we relevantly held the following:

[W]e find that the Wilson Letters constitute anonymous or pseudonymous political speech, thus receiving extensive constitutional protection under the First Amendment. We conclude that the Wilson Letters represent political speech because the award of substantial government contracts to contractors who are claimed to illegally engage in business with a prohibited foreign government directly implicates "the manner in which government is operated or should be operated." We also have no problem concluding that the Wilson Letters discuss affairs of government which are at the heart of the First Amendment protections. "Scott Wilson" wrote the Wilson Letters to the DLA and the USASC to inform them that he believed that KGL maintained business relationships with Iranian entities in violation of CISADA. KGL is a government contractor performing multi-million dollar contracts for the United States military. The DLA and the USASC are two government agencies responsible for the operation of the United States military. Additionally, KGL's alleged misconduct involved its possible connection to Iran businesses, misconduct that is a national and newsworthy issue. Thus, at their core, the Wilson Letters represent political speech involving the operation of the government and the questionable expenditure of public funds. The Wilson Letters directly implicate the appropriateness of the relationship between the United States Government and some of its contactors and those contractors'

- 4 -

relationships with a foreign government in conflict with the United States.

Furthermore, we note that the Wilson Letters cannot be categorized as commercial speech. The Wilson Letters do not "propose a commercial transaction," or propose the sale of a specific product at a specific price. Moreover, the Wilson Letters: (1) are not an advertisement; (2) they do not reference any specific product; and (3) we are unable to determine whether or not the author had an economic motivation for making the communication. Although PWC admitted that its employee authored the Wilson Letters, there is no evidence indicating whether he did so as a concerned citizen or whether he did so to advance the interests of Agility. Likewise, even if we knew that the author wrote the Wilson Letters with an economic motivation, that knowledge alone is insufficient to compel the classification of the Wilson Letters as commercial speech. Therefore, given the political nature of the Wilson Letters, they are entitled to the highest level of protection and not the intermediate level of protection that commercial speech receives under the First Amendment.

Accordingly, we find that the Wilson Letters are anonymous political speech under the First Amendment subject to *Pilchesky's* four-part test for disclosure of anonymous or pseudonymous speakers.

*Id.* at 49-50 (quotation, citations, and footnote omitted). Consequently, we vacated the trial court's order compelling discovery of the identity of "Scott Wilson" and remanded the case to the trial court for the proper application of the *Pilchesky* test. Upon remand, the trial court applied the *Pilchesky* test and, ultimately, denied the motion to compel the disclosure of the identity of "Scott Wilson."[1]

---

[1] The trial court noted in its opinion that Agility filed a motion for summary judgment on August 21, 2015, prior to the trial court's December 9, 2015, opinion; however, since discovery was not complete, the trial court denied the motion for summary judgment.

Meanwhile, the parties engaged in considerable discovery, at the completion of which, on June 4, 2018, Agility filed a motion for summary judgment, as well as a supporting brief. Therein, Agility averred they were entitled to summary judgment since KGL failed to set forth a *prima facie* case for their defamation and tortious interference claims, which in turn foreclosed KGL from proving its derivative claims of *respondeat superior*, conspiracy, aiding and abetting, and negligent supervision.

On June 8, 2018, KGL filed an answer in opposition to Agility's motion for summary judgment. On June 25, 2018, Agility filed a reply to KGL's answer in opposition, and following a hearing on the motion for summary judgment, by opinion and order entered on July 6, 2018, the trial court granted Agility's motion for summary judgment and dismissed KGL's complaint.

Specifically, the trial court concluded that, as a matter of law, the Wilson Letters involved "a matter of 'public concern'" and, for purposes of the instant litigation, KGL is a limited-purpose public figure. Trial Court Opinion, filed 7/6/18, at 4. Consequently, the trial court determined that KGL was required to set forth a *prima facie* case that the Wilson Letters contained false allegations that were made with "actual malice." **See id.** However, the trial court concluded that, as a matter of law, the Wilson Letters contained opinions, which are not actionable. **See id.** The trial court further concluded KGL did not set forth a *prima facie* case of "actual malice."

Additionally, the trial court held that, assuming the Wilson Letters contained defamatory statements, "there is no evidence that the letters caused harm to [KGL]." **See id.** at 6. In this regard, the trial court concluded KGL did not set forth any evidence of malice, so there was no evidence upon which a jury could award presumed damages. **See id.** Further, as to general damages, the trial court concluded the "record does not contain the testimony of a single witness to the effect that the Wilson Letters negatively affected his or her view of KGL." **See id.** at 7. Therefore, the trial court concluded there was no evidence of reputational harm. **See id.** Moreover, the trial court concluded there was no evidence of any out-of-pocket loss, which would establish special damages. **See id.**

This timely appeal followed. The trial court did not direct KGL to file a Pa.R.A.P. 1925(b) statement, and consequently, no such statement was filed. The trial court filed a brief Pa.R.A.P. 1925(a) statement relying on its previously filed opinion.

On appeal, KGL presents the following issues in its "Statement of the Questions Involved" (verbatim):

1. The U.S. Supreme Court held in **Milkovich v. Lorain Journal Co.**, 497 U.S. 1, 21 (1990), that "imaginative expression" or "loose, figurative, or hyperbolic language" are non-actionable opinion. Defendant "Scott Wilson" sent two letters (the "Wilson Letters") to the U.S. government, charging KGL with violating U.S. law and stating that KGL engaged in "a serious misrepresentation and violation of U.S. law," "violation of the Comprehensive Iran, Sanctions, Accountability, and Divestment Act of 2010," "violation of the Iran Sanctions Act," and "a clear violation of U.S. law." Were Wilson's statements

that KGL engaged in illegal conduct actionable statements of fact or actionable, "mixed" opinion (as opposed to non-actionable opinion)?

2. In defamation cases, damages may take the form of reputational harm ("general damages") or special damages (monetary loss). Reputational harm means "impairment of reputation and standing in the community" or a "showing that anyone thought the less of" the person. The Wilson Letters caused the U.S. government to investigate KGL for violations of U.S. law. KGL lost credibility and spent money to mitigate the damage. Was KGL's evidence of damages sufficient to raise a genuine issue of material fact?

3. In defamation cases requiring a showing of "actual malice," the plaintiff must show that the defendant made a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." When Wilson sent his Wilson Letters, he knew from contemporaneous documents that his charges of KGL violations of U.S. law were in serious doubt. He sent them anyway-all in the interest of, and within the scope of his employment for, KGL's government contracting competitor, Agility. Was KGL's evidence of malice sufficient to raise a genuine issue of material fact?

4. Under U.S. and Pennsylvania Supreme Court precedents, a defamation plaintiff is entitled to wide latitude in discovering evidence of "actual malice," including discovery into the "state of mind" of the defamation defendant. In a series of orders, the trial court ruled that KGL could not unmask Wilson, take discovery of his state of mind, source material and due diligence, or inquire into defendants' collaboration with Wilson to defame KGL. Were the trial court's discovery orders erroneous, and did they interfere with KGL's ability to obtain additional evidence of malice?

5. A defamation plaintiff must demonstrate "actual malice" if he is a limited-purpose public figure-someone who has voluntarily "thrust" himself into a public controversy. KGL is a government contractor that defendants dragged into a controversy when they sent the Wilson Letters to the U.S. government charging KGL with violating U.S. law. Was KGL a private figure (as opposed to limited-purpose public figure) such that it need only demonstrate negligence (as opposed to "actual malice").

6. Under U.S. Supreme Court precedent, a defamation defendant's burden to prove truth shifts to the plaintiff to prove

falsity where (1) the plaintiff is a public figure, or (2) the defamatory statement involves a matter of public concern *and* the defendant is a member of the news media. Were elements (1) or (2) satisfied such that KGL must prove falsity, and must KGL do so by clear and convincing evidence (as opposed to preponderance of the evidence)?

7. A party may seek leave of court to amend a pleading at any time; provided that, the amendments do not violate the law, or surprise or prejudice the other party. Six months before trial, while discovery remained open, KGL sought leave to amend its complaint to assert new defamation claims against the Agility Defendants that were timely under Pennsylvania's discovery rule. Should KGL have been granted leave to amend?

KGL's Brief at 6-9 (trial court answers omitted).[2]

Initially, we note the principles we apply in reviewing a summary judgment order are well-settled.

> Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own

---

[2] We note KGL's issues are interrelated, and where appropriate, we have addressed the issues in such a manner.

conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898, 904 (Pa.Super. 2016) (quotation omitted).

The requirements of a defamation claim are codified as follows:

**(a) Burden of plaintiff.**—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

**(b) Burden of defendant.**—In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:

(1) The truth of the defamatory communication.

(2) The privileged character of the occasion on which it was published.

(3) The character of the subject matter of defamatory comment as of public concern.

42 Pa.C.S. § 8343 (bold in original).

In its first issue, KGL argues the trial court erred in concluding the statements made in the Wilson Letters indicating KGL violated CISADA are statements of opinion, which are non-actionable, as opposed to statements of

fact or statements of "mixed opinion," which are actionable. *See* KGL's Brief at 21.

"A communication may be considered defamatory if it tends to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *Bell v. Mayview State Hosp.*, 853 A.2d 1058, 1062 (Pa.Super. 2004) (citation omitted). Further, in determining whether a statement is capable of defamatory meaning, a court must view the statement in context. *See id.* "The nature of the audience is a critical factor in determining whether a statement is capable of defamatory meaning." *Dougherty v. Boyertown Times*, 547 A.2d 778, 783 (Pa.Super. 1988) (some quotation omitted).

> When raised by a public figure concerning statements bearing on a matter of public concern,[3] claims for defamation are

---

[3] As indicated *supra*, this Court previously held the statements at issue bear on a matter of public concern. *See Kuwait & Gulf Link Transport Co.*, *supra*. Additionally, we now conclude that KGL is a "limited-purpose public figure," and thus, we find meritless KGL's Issue Five *supra*. As our Supreme Court has held:

> [A] "limited-purpose public figure,"…is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." To determine such status,…it is necessary to consider the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation."

*American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania*, 592 Pa. 66, 923 A.2d 389, 401 (2007). A "controversy" may be created by the individual's own actions. *See id.*

As this Court stated previously, "KGL is a government contractor performing multimillion-dollar contracts for the United States military." *Kuwait & Gulf Link Transport Co.*, 92 A.3d at 49. As such, KGL has

subject to an onerous standard of proof, owing to considerations of free speech that inhere to any claim that implicates the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (emphasizing the obligation of appellate courts to ensure that judgments entered pursuant to state tort law do not intrude on the "field of free expression"). Consequently, our Courts' First Amendment jurisprudence makes clear that statements on matters of public concern must be provable as false before there can be liability under state defamation law….Moreover,…a statement of opinion relating to matters of public concern that does not contain a provably false connotation will receive full constitutional protection.

*Krajewski v. Gusoff*, 53 A.3d 793, 803 (Pa.Super. 2012) (quotation marks and quotations omitted) (footnote added).

In determining whether a statement is capable of defamatory meaning, the trial court must also ascertain whether the statement constitutes an opinion. The question of "[w]hether a particular statement constitutes a fact or an opinion is a question of law for the trial court to determine." *Mathias v. Carpenter*, 587 A.2d 1, 3 (Pa.Super. 1991). Hence,

In determining whether [a publication is] capable of defamatory meaning, a distinct standard is applied [when] the publication is of an opinion. *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 575 (1986), *appeal denied,* 532 Pa. 665, 616 A.2d 986

_____

voluntarily exposed itself to increased risk of injury from defamatory falsehood and has effectively "assumed the risk of potentially unfair criticism by entering into the public arena and engaging the public's attention." *American Future Systems Inc.*, *supra*, 923 A.2d at 402 (quotation and citations omitted). Accordingly, we agree with the trial court that KGL is a public figure for purposes of the instant matter, and we reject KGL's argument to the contrary. *See* KGL's Fifth Issue *supra*; KGL's Brief at 49-51.

(1992). "A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of *undisclosed* defamatory facts justifying the opinion. A simple expression of opinion based on disclosed facts is not itself sufficient for an action of defamation." **Id.** (internal citations omitted); **see also Neish v. Beaver Newspapers, Inc.**, 398 Pa.Super. 588, 581 A.2d 619, 622–24 (1990), *appeal denied*, 527 Pa. 648, 593 A.2d 421 (1991) (editorial criticizing the way appellant handled his job and suggesting replacing him was an opinion not based on undisclosed defamatory facts and, therefore, was not actionable. The Court found that while the statements in the editorial "might be viewed as annoying and embarrassing, they were not tantamount to defamation.").

**Kurowski v. Burroughs**, 994 A.2d 611, 618 (Pa.Super. 2010) (emphasis in original).

This principle is in conformity with Restatement (Second) of Torts § 566, Expression of Opinion. **See Mathias**, **supra** (applying § 566). That section provides: "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." Restatement (Second) of Torts § 566.

Thus, generally, only statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania's defamation law. **Bell**, **supra**. In order for an opinion to be deemed capable of defamatory meaning, it must reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. **Dougherty**, **supra**.

Here, the trial court concluded there was no genuine issue of material fact that the factual assertions in the Wilson Letters relating to KGL's ties with

Iranian entities were substantially true. Further, the trial court concluded, as a matter of law, the statements made in the Wilson Letters indicating that these ties constituted a violation of CISADA constituted non-actionable opinions.

Specifically, in addressing this claim, the trial court relevantly indicated the following:

> With respect to the first issue, we agree with [Agility] that the Wilson Letters touch on a matter of "public concern." (The Superior Court has [stated as much in its previous decision].) Moreover, we agree with [Agility] that, for purposes of this litigation, KGL is a limited-purpose public figure. Accordingly, [KGL] must prove the falsity of the Wilson Letters by clear and convincing evidence. ***See Tucker v. Philadelphia Daily News***, 848 A.2d 113, 127-28 (Pa. 2004). The identity and relationship of the businesses mentioned in the Wilson Letters are generally not in dispute. Notwithstanding, the thrust of [KGL's] case is that any relationship of [KGL] with Iranian entities was not such as would allow for the accusation that KGL was in violation of CISADA. We agree with [Agility], however, that this accusation can best be construed as an opinion.
>
> ***
>
> It may well be that "Scott Wilson," as [KGL] contends, got it wrong when he requested an investigation based on an allegation of a violation of the sanction laws. His misapprehension, however, with respect to the legal import of the business relationships described in the letters is, we conclude, an opinion, and therefore, not actionable. [KGL] contends that the Wilson Letters do not contain matters of opinion. Instead, [KGL] argues that the accusations in the letters suggest the commission of a crime, which is actionable "*per se*." At the same time, however, they argue that the question of whether KGL was in violation of CISADA is a legal question and not a factual one. To this extent, they belie their own contention.

Trial Court Opinion, filed 7/6/18, at 4 (footnote omitted) (footnote added).

We agree with the trial court in this regard. Specifically, we conclude the statements contained in the Wilson Letters regarding KGL's violation of CISADA constituted subjective opinions. **See Parano v. O'Connor**, 641 A.2d 607 (Pa.Super. 1994). Moreover, the facts upon which the author of the Wilson Letters based his or her opinions (*i.e.*, KGL's ties to Iranian entities) were disclosed, and therefore, the opinions did not imply undisclosed false facts. **See Dougherty**, **supra**. As the trial court noted, while the author of the Wilson Letters may have misunderstood the implication of KGL's ties, the simple expression of opinion (that KGL violated CISADA because of these ties) is not itself sufficient for an action of defamation, "no matter how unjustified and unreasonable the opinion may be or how derogatory it is." **Mathias**, 587 A.2d at 363 (quotation omitted).

In any event, assuming, *arguendo*, KGL is correct that the challenged statements regarding KGL's violation of CISADA constitute statements of fact or opinions based on undisclosed, defamatory facts, we note:

> Caselaw prescribes additional elements that arise in relation to the character of the statement, the role of the defendant as a media outlet, or the role of the plaintiff as a public official or public figure. If the statement in question bears on a matter of public concern, or the defendant is a member of the media, First Amendment concerns compel the plaintiff to prove, as an additional element, that the alleged defamatory statement is in fact false.[4] **See Philadelphia Newspapers, Inc. v. Hepps**,

---

[4] To the extent KGL argues that, since Agility was not a member of the media, KGL was not required to prove the statements were false, **see** KGL's Issue Six *supra* and Brief at 53-56, we disagree. Under the First Amendment to the

- 15 -

475 U.S. 767, 777, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 2, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *Ertel v. Patriot–News Co.*, 544 Pa. 93, 674 A.2d 1038, 1041 (1996).  If the plaintiff is a public official or public figure, she must prove also that the defendant, in publishing the offending statement, acted with "actual malice," i.e. "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa.Super. 508, 546 A.2d 639, 642 (1988).

"Actual malice" is a fault standard, predicated on the need to protect the public discourse under the First Amendment from the chill that might be fostered by less vigilant limitations on defamation actions brought by public officials.

> [T]he stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability or further proliferation.  But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones.

*Curran*, 546 A.2d at 643.  Thus, the actual malice standard, by design, assures "that public debate will not suffer for lack of 'imaginative expression' or 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation." *Milkovich*, 497 U.S. at 2, 110 S.Ct. 2695.  "[T]he First Amendment requires that we protect some falsehood in order to protect speech that matters."

Thus, the "actual malice" standard is a constitutionally mandated safeguard and, as such, must be proven by clear and

_____

United States Constitution, a plaintiff asserting defamation concerning a publication of a matter of "public concern" bears the burden of proving that the publication was false.  *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).  This Court has previously held the statements at issue bear on a matter of public concern.

convincing evidence, the highest standard of proof for civil claims. Moreover, evidence adduced is not adjudged by an objective standard; rather, "actual malice" must be proven applying a *subjective* standard by evidence "that *the defendant in fact entertained serious doubts as to the truth of his publication.*" ***See Curran***, 546 A.2d at 642. This determination may not be left in the realm of the factfinder:

> The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice".

***Curran***, 546 A.2d at 644. We have recognized accordingly that the question of "actual malice" is not purely one of fact, but rather may be described as one of "ultimate fact," a "hybrid of evidential fact on the one hand and conclusion of law on the other." ***Id.***

Application of these concepts is more difficult than its recitation. ***See Curran***, 546 A.2d at 644. "[E]rroneous statement is inevitable in free debate, and…must be protected if the freedoms of expression are to have the 'breathing space' that they need to survive." ***Id***. at 645. To minimize judicial intrusion into this "breathing space," our courts have tended to measure actionable conduct by what the defendant did, as opposed to what it refrained from doing or might have done but omitted to do. ***Curran***, 546 A.2d at 648. Thus, while "actual malice" may be shown by circumstantial evidence of events surrounding the publication of the offending statement, that evidence must tend to establish fabrication, or at least that the publisher had "obvious reasons to doubt the veracity of the informant or the veracity of his reports." Because "actual malice" is a fault standard, it is not shown by the falsity of the statement in and of itself. ***See Curran***, 546 A.2d at 642. Similarly, evidence of ill will or a defendant's desire to harm the plaintiff's reputation, although probative of the defendant's state of mind, without more, does not establish "actual malice." ***Harte–Hanks Communications, Inc. v. Connaughton***, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) ("The phrase 'actual malice' is confusing in that it has nothing to do with bad motive or ill will.").

*Lewis v. Philadelphia Newspapers, Inc.*, 833 A.2d 185, 191-93 (Pa.Super. 2003) (quotations and citations omitted) (emphasis in original) (footnote added).

In the case *sub judice*, as indicated *supra*, this Court previously held the statements contained in the Wilson Letters bear on a matter of public concern, thus contrary to KGL's assertion,[5] it had the burden to adduce clear and convincing evidence to allow a jury to find the Wilson Letters were, in fact, false. **See ToDay's Housing v. Times Shamrock Communications, Inc.**, 21 A.3d 1209 (Pa.Super. 2011); **Lewis**, **supra**. Moreover, as indicated *supra*, since KGL is a limited-purpose public figure, contrary to KGL's argument, it had the burden to set forth a *prima facie* case that Agility published the Wilson Letters with "actual malice," *i.e.*, with knowledge that the Wilson Letters were false or with reckless disregard of whether the Wilson Letters were false. **ToDay's Housing**, **supra**; **Lewis**, **supra**.

In addressing this issue, the trial court suggested that, to the extent the Wilson Letters contained false statements, KGL failed to set forth a *prima facie* case to establish the presence of "actual malice." Relevantly, the trial court noted:

> The various business entities referred to in the Wilson Letters do in fact exist and have had or continue to have business relationships. A contention that their relationship violated the law is based, in no small part, on altered emails. [KGL] admits,

---

[5] **See** KGL's Issue 6 *supra* and Brief at 56.

however, that the emails emanated from former disgruntled employees of KGL. In other words, there is no allegation that [Agility] forged or altered the emails[, upon which the author of the Wilson Letters relied.]

***

"[T]he requirement that the plaintiff be able to show actual malice by clear and convincing evidence is initially a matter of law." **Joseph v. Scranton Times L.P.**, 129 A.3d 404, 436 (Pa. 2015) (citations omitted). In this case, there is simply no evidence of malice[.]

Trial Court Opinion, filed 7/6/18, at 6 n.2.

Upon review of the record, contrary to KGL's argument,[6] we agree with the trial court that evidence of "actual malice" is substantially lacking. In so holding, we acknowledge that KGL argues the falsity of the Wilson Letters; however, the demonstrable falsity of a statement does not establish Agility's fault, *i.e.*, "actual malice," in writing and disseminating the Wilson Letters. **See Lewis**, **supra**.

Furthermore, KGL argues that the author of the Wilson Letters relied on a privileged memo, which suggested the veracity of the underlying emails should be authenticated. KGL argues the author's failure to investigate the underlying emails more fully, as well as his or her failure to recite larger portions of the privileged memo in the Wilson Letters, demonstrates "actual malice."

---

[6] **See** KGL's Issue Three *supra* and Brief at 34-38.

- 19 -

Initially, we note the undisputed evidence shows that representatives of Agility met with the source of the emails to "satisfy themselves" as to the "veracity of the emails." Videotaped Deposition of Adlai Shalabi, dated 3/16/18, at 517-20. In any event, the fact that the author of the Wilson Letters failed to investigate the emails more fully and/or failed to recite larger portions of the privileged memo does not, in our view, establish that he or she acted with any level of fault in writing his or her concerns about KGL's activities. Rather, this evidence is consistent with simple negligence regarding a matter of public concern, which remains subject to First Amendment protection. **See Lewis**, **supra**. Even if a higher degree of responsibility would have counseled greater care in investigating the emails, "actual malice" is not established**. See Harte–Hanks Communications, Inc.**, **supra**. Consequently, KGL's evidence is insufficient as a matter of law to demonstrate "actual malice" and therefore raises no impediment to summary judgment. **Lewis**, **supra**.

Apparently recognizing the lack of evidence regarding "actual malice," KGL also suggests the trial court erred in prohibiting discovery of evidence that may have established "actual malice."[7] Specifically, KGL argues the trial court erred in its analysis of the third and fourth prongs of the **Pilchesky** test

---

[7] **See** KGL's Issue Four *supra* and Brief at 38-48.

and, thus, in denying the motion to compel the discovery of the identity of "Scott Wilson."

As this Court previously recognized in this case:[8]

> ***Pilchesky*** specifically addressed the issue of under what circumstances a trial court can compel the disclosure of the identity of individuals speaking anonymously or pseudonymously in a defamation case. ***Pilchesky***, 12 A.3d at 442.
>
> In ***Pilchesky***, John Does made allegedly defamatory statements about the President of Scranton City Council by posting messages on a website under a unique user name or pseudonym. ***Id.*** at 432–33. The plaintiff petitioned the trial court to compel the disclosure of the identity of the John Doe defendants and that court granted the petition. ***Id.*** at 433–34.
>
> On appeal, this Court held that the trial court must address the following four factors before ordering the disclosure of the identity of an anonymous or pseudonymous speaker: first, "[t]he reviewing court must ensure that the John Doe defendant receives proper notification of a petition to disclose his identity and a reasonable opportunity to contest the petition"; second, the party seeking disclosure "must present sufficient evidence to establish a prima facie case for all elements of a defamation claim, within the plaintiff's control, such as would survive a motion for summary judgment"; third, "[a] petitioner must submit an affidavit asserting that the requested information is sought in good faith, is unavailable by other means, is directly related to the claim and is fundamentally necessary to secure relief"; and fourth, "[t]he court must expressly balance the defendant's First Amendment rights against the strength of the plaintiff's *prima facie* case." ***Id.*** at 442–45. This Court stated that the four requirements "are necessary to ensure the proper balance between a speaker's right to remain anonymous and a defamation plaintiff's right to seek redress." ***Id.*** at 442.

---

[8] We specifically previously held "the Wilson Letters are anonymous political speech under the First Amendment subject to ***Pilchesky's*** four-part test for disclosure of anonymous or pseudonymous speakers." ***Kuwait & Gulf Link Transport Co.***, 92 A.3d at 50.

***Kuwait & Gulf Link Transport Co.***, 92 A.3d at 49 (emphasis omitted).

In concluding KGL failed to meet the third and fourth prongs of the ***Pilchesky*** test, the trial court relevantly stated the following:

> We next consider the requirement that plaintiff submit an affidavit of good faith and necessity. As discussed above, the ***Pilchesky*** court elaborated that the plaintiff must state that the information is "sought in good faith, is unavailable by other means, is directly related to the claim and is fundamentally necessary to secure relief." ***Pilchesky***, 12 A.3d at 444-45 (emphasis added).
>
> KGL asserts that is submitted an affidavit of good cause as required by ***Pilchesky***. KGL argues that it has exhausted all other means to obtain the identity of Scott Wilson, and that his identity is necessary in order to prove fault[.] Agility counters that while KGL has satisfied the technical requirements of submitting an affidavit, the information is, in fact, not sought in good faith, is available through other means, does not relate to the claim, and is not fundamentally necessary to secure relief.
>
> We agree with KGL that it has satisfied the technical requirements of ***Pilchesky*** by submitting an affidavit alleging good faith, has made substantial efforts to uncover the identity of Scott Wilson without success, and that the information sought relates to the claim. However, the affidavit notwithstanding, we do not agree that the information sought is fundamentally necessary to secure relief. In the present case, Agility admits that it is responsible for Scott Wilson's statements under the theory of *respondeat superior*. Moreover, Agility has offered to produce a corporate designee pursuant to…Pa.R.C.P. 4007.1(e) (stating that a corporation may respond to a subpoena by appointing a representative, who "shall testify as to matters known or reasonably available to the organization"). KGL's concerns that a corporate designee will "likely involve ***Pilchesky*** in an overly-broad fashion" to protect Wilson's identity are purely speculative and can be addressed by this court if such an issue arises. Consequently, KGL may seek recovery against Agility without knowing the identity of Wilson, and as a result, KGL has not satisfied the third prong of ***Pilchesky***.
>
> Finally, we must balance Scott Wilson's right under the First Amendment against the strength of KGL's *prima facie* case. The ***Pilchesky*** court instructed that "the reviewing court should

examine the defamatory nature of the comments, the quantity and quality of evidence presented, and whether the comments were privileged." *Pilchesky*, 12 A.3d at 445. The court also should consider the forum where the comments arose. *Id.* Comments on "matters of public importance of those which criticize public officials" are entitled to higher protection.

KGL argues that the equities weigh strongly in favor of disclosing Wilson's identity. Specifically, KGL contends that it has established a strong *prima facie* case, defendants have already partially revealed Wilson's identity by admitting that he was acting within the scope of his employment, Wilson's malicious intent undermines his right to anonymity, Wilson's speech was commercially motivated, he was not a legitimate whistleblower, and Wilson as a foreign speaker is not entitled to First Amendment protection. Despite these various arguments, we agree with [Agility] that the case put forward by [KGL] does not outweigh Wilson's First Amendment rights.

The question of Wilson's First Amendment rights has been laid to rest by the Superior Court. We have been instructed, in no uncertain terms, that "given the political nature of the Wilson Letters, they are entitled to the highest level of protection…under the First Amendment." We agree with [Agility] that the attempts of [KGL] to downplay Wilson's strong First Amendment rights amount to nothing more than an attempt to re-litigate issues which were foreclosed by the Superior Court's [previous] decision. These include [KGL's] assertions that Wilson was speaking in a commercial forum, that he has no standing to raise free speech rights, and that the United States Constitution may not apply because Wilson may not be a United States citizen.

Of controlling importance is that the strength of [KGL's] evidence simply does not outweigh the necessity for First Amendment protections in this case….Without prejudging the issue, we readily understand [Agility's] arguments that a defamatory effect can be derived from the Wilson Letters only by misconstruing them. We also agree with [Agility] that there is little evidence of harm in this case. Notwithstanding allegations of adverse media coverage and inquiries from government officials, there is no direct evidence that [KGL's] reputation has been damaged in the eye of a specific third party or that KGL suffered a loss of its business. Allegations with respect to expenditures for attorneys and lobbyists are, at best, imprecise. We note, also, Pennsylvania law which provides a defamation plaintiff must prove actual impairment of reputation in the

> community and that it is not enough that the plaintiff be merely embarrassed or annoyed.
>
> In sum, we believe the quantity and quality of the evidence of defamation presented in this case does not outweigh the right of pseudonymous speech in this case. Consequently, the motion to apply ***Pilchesky*** and compel disclosure of John Does' [(Wilson's)] identity will be denied.

Trial Court Opinion, filed 12/9/15, at 3-5 (footnotes, citations, and emphasis omitted).

Contrary to KGL's assertion, we conclude the trial court did not err in its application of ***Pilchesky*** to the instant matter. We specifically reject KGL's claim that ***Pilchesky*** did not apply in any manner to the instant matter because the First Amendment anonymity rights were not implicated in this case. ***See*** KGL's Brief at 40. As indicated *supra*, this Court previously held the ***Pilchesky*** test was relevant to the within matter and, in fact, we specifically directed the trial court to undertake an analysis thereunder in order to determine whether Agility should be compelled to disclose Scott Wilson's identity.[9]

_____

[9] KGL also lists a litany of discovery orders and suggest that, if the trial court had granted the discovery orders, KGL "may have" been able to discover the motivation of the person(s) who sent the emails upon which "Scott Wilson" relied, as well as what additional steps Agility could have taken to authenticate the veracity of the emails. KGL's speculative argument aside, we note that evidence of ill will or the email sender's desire to harm KGL, without more, would not establish "actual malice" with regard to "Scott Wilson's" reliance upon the emails. **See *Harte–Hanks Communications, Inc.*, *supra*** (holding "actual malice" has nothing to do with bad motive or ill will). Moreover, as indicated *supra*, "actual malice" is generally an inquiry into "what the

Finally, we note KGL argues the trial court erred in denying KGL's February 9, 2018, motion to file an amended complaint asserting two new defamation claims related to the following: Agility (as opposed to "Scott Wilson") sent the privileged memo underpinning the Wilson Letters to congressional leaders, and Agility (as opposed to "Scott Wilson") sent a 2011 email to various people indicating KGL violated CISADA. **See** KGL's Issue Seven *supra*; KGL's Brief at 56-58.

The right to amend should be liberally granted, absent an error of law or resulting prejudice to an adverse party. **Connor v. Allegheny General Hospital**, 501 Pa. 306, 461 A.2d 600, 602 (1983); Pa.R.C.P. 1033.

> However, the right to amend is not absolute. Where the initial pleading reveals that the complaint's defects are so substantial that amendment is not likely to cure them, and that the *prima facie* elements of the claim or claims asserted will not be established, the right to amend is properly withheld. **See Spain v. Vicente**, 315 Pa.Super. 135, 461 A.2d 833, 837 (1983); **also see Behrend v. Yellow Cab Co.**, 441 Pa. 105, 271 A.2d 241, 243 (1970). Furthermore, the decision to grant or deny leave to amend is within the sound discretion of the trial court, and will not be reversed absent a clear abuse of discretion. **Junk v. East End Fire Dept.**, 262 Pa.Super. 473, 396 A.2d 1269, 1277 (1978) [(*en banc*)].

**Feingold v. Hill**, 521 A.2d 33, 39 (Pa.Super. 1987).

KGL's new claims were predicated on statements substantially similar to those found in the Wilson Letters. Thus, permitting KGL to amend its

---

defendant did, as opposed to what it refrained from doing or might have done but omitted to do." **Curran**, 546 A.2d at 648.

complaint to add these new defamation claims would have been futile. Accordingly, we conclude the trial court did not abuse its discretion in denying KGL permission to amend its complaint.[10]

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2019

---

[10] In light of our discussion *supra*, we need not additionally address KGL's Issue Two *supra* related to damages.  However, suffice it to say that we find no error in the trial court's analysis thereof.  **See** Trial Court Opinion, filed 7/6/18, at 6-8.