J-S33031-20

2020 PA Super 190

JAMIYLAH BURNS                          :       IN THE SUPERIOR COURT OF
                                        :             PENNSYLVANIA
                                        :
            v.                          :
                                        :
                                        :
                                        :
BLAKELEY COOPER                         :
                                        :
            Appellant                   :       No. 2571 EDA 2019

Appeal from the Judgment Entered November 1, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2016-11905

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                        **FILED AUGUST 11, 2020**

Appellant, Blakeley Cooper, appeals from the November 1, 2019,

judgment entered upon a jury verdict in favor of Appellee, Jamiylah Burns, in

this case for defamation and tortious interference with contract.[1]  After a

careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note Appellant purported to appeal from the August 5, 2019, order
denying his post-trial motion; however, he subsequently filed a praecipe for
the entry of judgment.  The docket reflects the prothontary entered judgment
in favor of Appellee on November 1, 2019.  Although an appeal from an order
denying post-trial motions is interlocutory, where judgment is subsequently
entered, the appeal is "treated as filed after such entry and on the date
thereof."  Pa.R.A.P. 905(a)(5).  **See K.H. v. J.R.**, 573 Pa. 481, 826 A.2d 863
(2003).  As such, we deem the appeal in the case *sub judice* to be properly
taken from the subsequently entered judgment.

The relevant facts and procedural history are as follows: On August 15, 2014, Appellant filed a divorce complaint against Appellee. On December 5, 2015, while the divorce matter was pending, Appellee decided to visit her father, who lived in Washington D.C. Concerned about the safety of her jewelry and other valuables, including a Louis Vuitton baby bag, Appellee removed the items from her home and put them in her car.[2]

While her car was parked outside of her father's house, someone smashed the car window and stole the jewelry, Louis Vuitton baby bag, and other personal items. Appellee immediately contacted the police, who prepared a report in connection with the incident.

Appellee submitted an insurance claim to Erie Insurance Company ("Erie") in connection with the loss. The initial processing of the claim was assigned to Kathy Riser, a representative of Erie, and the claim appeared to proceed in a routine manner. However, because the insurance policy was in the names of both Appellant and Appellee, Erie required Appellant to join in the claim, and, thus, Ms. Riser contacted Appellant via telephone on January 18, 2016, at 9:54 a.m. Ms. Riser's notes of the call read as follows:

> Spoke to [Appellant].

---

[2] Appellee testified that, during this time, the divorce was not amicable, but she and Appellant were living in the same house. N.T., 6/18/19, at 37-38. She testified she began putting valuable items in her car out of concern that Appellant might remove them from the marital home. *Id.* at 39.

> [Appellant] stated he does not believe this incident occurred, therefore he will not be signing the claim forms[.]
>
> He stated that she does not have a Luis Vutton [*sic*] bag, but it is a baby bag[.]
>
> He finds it hard to believe that she left such high value items in the car.

Trial Court Opinion, filed 1/17/20, at 2 (citations to record omitted).

Shortly after this call, at 10:00 a.m., Ms. Riser referred Appellee's claim to Erie's Investigative Services Section ("ISS"), which has the responsibility of investigating whether an insurance claim involves fraud. Thereafter, Mark Carlin, who was an Erie ISS investigator, contacted Appellee and requested that she meet with him in his office in Media, Pennsylvania, to review the facts surrounding her insurance claim. Appellee agreed and met with Mr. Carlin.

During the meeting, Appellee discovered Mr. Carlin was a fraud investigator. Appellee, who held a physical therapist license, became concerned that she was being investigated for fraud.

On June 13, 2016, Appellee filed a civil complaint, which she later amended on August 1, 2016. In her amended complaint, as to Appellant, Appellee presented claims of defamation and tortious interference with contract.[3]

---

[3] Appellee also included Erie Indemnity Company, d/b/a/ Erie Insurance Company, as a defendant, and she presented claims of breach of contract and bad faith. However, thereafter, Erie made payment on Appellee's insurance claim, and all claims between Appellee and Erie have been either dismissed or settled.

With regard to her defamation claim, Appellee specifically alleged Appellant made false statements to Erie representatives indicating Appellee filed a fraudulent insurance claim. Appellee averred her reputation was damaged by Appellant's false statements, which suggested Appellee had committed the crime of insurance fraud.

With regard to her tortious interference with contract claim, Appellee averred Appellant's intentional false defamatory statements, which he made to Erie representatives, interfered with her insurance contract with Erie.

On August 18, 2016, Appellant filed an answer with new matter and a counterclaim in which he presented against Appellee a claim of abuse of process, and Appellee filed an answer thereto.[4]

On July 16, 2018, Appellant filed a motion for summary judgment, as well as a brief in support thereof, and on August 15, 2018, Appellee filed an answer in opposition to the motion for summary judgment.[5] Additionally, Appellee filed a motion for summary judgment as to Appellant's counterclaim.

By order entered on October 30, 2018, the trial court denied Appellant's motion for summary judgment; however, the trial court granted Appellee's

---

[4] Appellant amended his new matter and counterclaim several times in response to Appellee filing preliminary objections.

[5] As will be discussed in detail *infra*, in support of her opposition to Appellant's motion for summary judgment, Appellee pointed to Appellant's deposition testimony wherein Appellant admitted he told an Erie representative that Appellee "was a liar who could not be trusted." **See** Appellee's Motion in Opposition to Summary Judgment, filed 8/15/18, at Exhibit C.

motion for summary judgment and dismissed Appellant's counterclaim for abuse of process. Thereafter, the matter proceeded to a jury trial as to Appellee's claims of defamation and tortious interference with contract against Appellant.

At the conclusion of the jury trial, on June 20, 2019, the jury answered "Yes" to the question of whether Appellant was liable to Appellee for defamation, as well as to the question of whether Appellant was liable to Appellee for tortious interference with contract. The jury then awarded Appellee $55,000.00 in compensatory damages. Additionally, the jury answered "Yes" to the question of whether Appellant's conduct was so outrageous as to entitle Appellee to punitive damages. The jury then awarded Appellee $20,000.00 in punitive damages.

On July 3, 2019, Appellant filed a post-trial motion,[6] and by order entered on August 5, 2019, the trial court denied Appellant's post-trial motion. This appeal followed on August 28, 2019. On September 4, 2019, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant complied on September 24, 2019. On November 1, 2019, upon praecipe of Appellant, the prothontary entered judgment in favor of Appellee and against

---

[6] We note the trial court expressly granted Appellant permission to file a post-trial motion no later than July 3, 2019. *See Lenhart v. Cigna Companies*, 824 A.2d 1193, 1198 (Pa.Super. 2003) ("[T]he decision to allow the filing of post-trial motions *nunc pro tunc* is vested in the sound discretion of the trial court.") (citation omitted)).

Appellant in the amount of $75,000.00. On January 17, 2020, the trial court filed a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant sets forth the following sole issue in his "Statement of Questions Involved" (verbatim):

> In an action alleging defamation, trial is authorized if the trial court determines, before trial, as a matter of law, that the statement at issue is capable of a defamatory meaning. Is it permissible for the trial court to do the opposite: not make such determination; have the case go to trial (without such determination); and then have such determination made by the jury, after trial?

Appellant's Brief at 4 (suggested answer omitted).

Appellant contends the trial court was required to determine before trial, and as a matter of law, whether any statements made by Appellant were capable of a defamatory meaning. *See* Appellant's Brief at 21, 27, 29. He avers the trial court "shirked" its duty by failing to render a ruling prior to trial in this regard and permitting the jury, in the first instance, to determine whether the statements were capable of a defamatory meaning. *Id.* at 30-31. Additionally, Appellant suggests that, to the extent the trial court attempted to "cure" its error by asserting in its Pa.R.A.P. 1925(a) opinion that Appellant's statements were capable of a defamatory meaning, the court's attempt was improper since such a determination must be made by the trial court before the commencement of trial. *Id.* at 35. After a careful review, we conclude Appellant has mischaracterized the record and the trial court's rulings in the case *sub judice*.

Initially, for background purposes, we note the following relevant legal principles:

The requirements of a defamation claim are codified as follows:

**(a) Burden of plaintiff.**—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

**(b) Burden of defendant.**—In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:

(1) The truth of the defamatory communication.

(2) The privileged character of the occasion on which it was published.

(3) The character of the subject matter of defamatory comment as of public concern.

42 Pa.C.S.A. § 8343 (bold in original).

Further, as it relates specifically to the defamatory character of the communication, as Appellant correctly contends, this Court has relevantly held the following:

Whether the challenged statements are capable of having a defamatory meaning is a question of law for the court to determine in the first instance. "A statement is defamatory if it tends to harm an individual's reputation so as to lower h[er] in the

estimation of the community or deter third persons from associating or dealing with h[er]."

Pennsylvania courts have held that certain types of communications, although undoubtedly offensive to the subject, do not rise to the level of defamation. For example, expressions of opinion are not actionable. Likewise, statements which are merely annoying or embarrassing or "'no more than rhetorical hyperbole'" or "'a vigorous epithet'" are not defamatory.

*Kryeski v. Schott Glass Technologies, Inc.*, 626 A.2d 595, 600-01 (Pa.Super. 1993) (internal citations and quotations omitted). *See Baker v. Lafayette College*, 516 Pa. 291, 532 A.2d 399, 402 (1987) ("In order for a statement to be considered libelous or slanderous, the trial court must, in the first instance, make a determination as to whether the communication complained of can be construed to have the defamatory meaning ascribed to it by the complaining party.") (citation omitted)); *Kuwait & Gulf Link Transport Company v. Doe*, 216 A.3d 1074 (Pa.Super. 2019) (holding that in ruling upon a summary judgment motion the issue of whether a statement is capable of a defamatory meaning is an issue for the trial court to decide as a matter of law).

In the case *sub judice*, in his motion for summary judgment, Appellant averred that Appellee failed to set forth a *prima facie* case as to defamation and, further, that there was no genuine issue of material fact such that Appellant was entitled to summary judgment as a matter of law. Moreover, in his brief attached to his summary judgment motion, Appellant specifically

argued Appellee failed to set forth a *prima facie* case that any statements made by Appellant were capable of a defamatory meaning.

By order entered on October 30, 2018, the trial court held that "[t]he Motion for Summary Judgment of [Appellant] is DENIED." Trial Court Order, filed 10/30/18, at 2 (bold omitted). Additionally, the trial court specifically noted the following:

> Counts I and II of [Appellee's] Amended Complaint are brought against [Appellant] for defamation and tortious interference with contract, on the basis that [Appellant] made statements to an Erie representative casting doubt on the validity of her insurance claim. Those statements include that [Appellee] "was a liar who could not be trusted." ([Appellant's] Dep., at 65[;] [Appellee's] Response to [Appellant's] Mot. for Summary Jt., Ex. C). [Appellant] argues that the statement was not defamatory, that it was protected by privilege, and that [Appellee] fails to show damages. To the contrary, the statement that someone is a liar is, "'as a matter of law, capable of defamatory meaning." **Smith v. Wagner**, 588 A.2d 1308, 1311 (Pa.Super. 1991)….[Appellant] fails to identify any recognized privilege that would apply to this case.

Trial Court Order, filed 10/30/18, at 2 n.3.

Based on the aforementioned, as is evident, contrary to Appellant's assertion, the trial court considered in the first instance whether the challenged statement was capable of having a defamatory meaning as a question of law when it ruled on Appellant's summary judgment motion. **See id.** The trial court answered the issue affirmatively prior to trial, and therefore, contrary to Appellant's assertion, there is no evidence the trial court "shirked" its duty in this regard. The trial properly confirmed as much in its Pa.R.A.P. 1925(a) opinion. **See** Trial Court Opinion, filed 1/17/20, at 5 n.6

("[T]he Court did determine that [Appellant's] statements were capable of a defamatory meaning before submitting the jury the question [of] whether the statements were defamatory.") (citations to record omitted)). Consequently, there is no merit to Appellant's claim.[7]

This does not end our inquiry, however, as Appellant additionally contends that, assuming, *arguendo*, the trial court properly ruled the statement at issue was capable of a defamatory meaning, the evidence offered at trial was insufficient to sustain the jury's verdict since Appellee failed to prove "the statement's recipient—the insurer--understood the statement to have a defamatory meaning."[8] Appellant's Brief at 35 (bold omitted).

_____

[7] As indicated *supra*, in denying Appellant's motion for summary judgment, the trial court determined Appellant's statement that Appellee "was a liar who could not be trusted" was capable of a defamatory meaning as a matter of law. To the extent Appellant suggests on appeal the trial court erred in this regard, we disagree. It is well-settled that statements that a person is a liar are capable of a defamatory meaning as a matter of law. **See Smith**, **supra**. Further, statements implicating a person committed a crime, as could be inferred from Appellant's statement in the context at issue, are capable of a defamatory meaning as a matter of law. **See Brown v. Philadelphia Tribune Co.**, 668 A.2d 159 (Pa.Super. 1995). Accordingly, the trial court properly denied Appellant's summary judgment motion on this basis. **See Nicolaou v. Martin**, 649 Pa. 227, 195 A.3d 880, 891 (2018) ("Summary judgment is appropriate [only in] cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.") (citation omitted)).

[8] Appellant sufficiently presented this claim in his post-trial motion and Pa.R.A.P. 1925(b) statement. We note with displeasure, however, that Appellant neither included this issue within his "Statement of Questions Involved" nor in a separately headed argument section of his appellate brief. **See** Pa.R.A.P. 2116, 2119. However, since Appellant's briefing failures do not

- 10 -

Accordingly, Appellant suggests he is entitled to judgment notwithstanding the verdict ("judgment n.o.v.") as to Appellee's defamation claim.

> Our standard of review of an order denying judgment n.o.v. is whether, reading the record in the light most favorable to the verdict winner and granting the benefit of every favorable inference, there is sufficient competent evidence to support the verdict. Any conflict in the evidence must be resolved in the verdict winner's favor. Judgment n.o.v. may be granted only in clear cases where the facts are such that no two reasonable minds could fail to agree that the verdict was improper.

*Tillery v. Children's Hospital of Philadelphia*, 156 A.3d 1233, 1239-40 (Pa.Super. 2017) (quotation omitted). We will disturb a trial court's grant or denial of judgment n.o.v. "only for an abuse of discretion or an error of law." *Quinby v. Plumsadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061, 1074 (2006) (citation omitted).

As indicated *supra*, "the threshold question in an action for defamation is whether the communication at issue is capable of a defamatory meaning. It is for the court in the first instance to make this determination[.]" *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 461 (Pa.Super. 1984). Thereafter, if the trial court concludes the statement is capable of a defamatory meaning, it is then for the jury, as the finder of fact, to determine whether it was so understood by the recipient. *Id.*

> [To be defamatory the] communication [must] tend[] to so harm another's reputation as to lower h[er] in the estimation of

---

impede our meaningful review in this case, we shall review the merits of the issue as presented in the argument portion of his brief.

the community or deter third persons from associating or dealing with h[er]. To be defamatory, these words must have been understood by the 'recipient correctly, or mistakenly but reasonably,' to mean what the defamed party asserts they were understood to mean.

*Baird v. Dun and Bradstreet*, 446 Pa. 266, 285 A.2d 166, 169 (1971) (citations omitted). With regard to the latter, the "nature of the audience hearing the remarks is a critical factor[.]" *Maier v. Maretti*, 671 A.2d 701, 704 (Pa.Super. 1995) (citation omitted).

In the case *sub judice*, viewing the evidence in the light most favorable to Appellee, the verdict winner, we conclude the jury could reasonably find that the recipients of Appellant's statement understood the statement to be defamatory in nature.

For instance, Appellant admitted that, although he had no first-hand knowledge of the situation, he was a policyholder in the instant matter and informed an Erie representative that he believed the incident as alleged by Appellee did not occur. N.T., 6/19/19, at 102. He admitted that he was aware that, if Appellee filed a claim for a loss, and the loss did not occur, the claim would be considered dishonest. *Id.* at 108. Further, after being confronted with his deposition testimony, Appellant admitted at trial that he informed an Erie representative that Appellee "was a liar who could not be trusted[.]" *Id.* at 111-12.

Moreover, Carl Gremminger, an Erie property claim supervisor, admitted Erie delayed paying Appellee's insurance claim and conducted a full fraud

investigation because of statements made by Appellant to Erie representatives. *Id.* at 78, 86-87. As indicated *supra*, such statements included Appellant's statement that Appellee "was a liar who could not be trusted." *Id.* at 111-12.

Here, Appellant made his statement that Appellee "was a liar who could not be trusted" to an Erie representative, who had contacted him in connection with Appellee's insurance claim. In response to Appellant's statement, Erie conducted a full investigation into whether Appellee's claim was fraudulent in nature.

We conclude the jury could reasonably find that the defamatory meaning of Appellant's statement was understood by Erie representatives. *See Krolczyk v. Goddard Systems, Inc.*, 164 A.3d 521 (Pa.Super. 2017) (holding statement ascribing to the plaintiff the commission of a crime constitutes defamation); *Smith*, 588 A.2d at 1311 (finding statements a person is a liar, thief, or "crook" are defamatory in nature); *Agriss*, *supra* (holding statement published to employee's supervisor and co-workers concerning plaintiff's opening of company mail was defamatory because it implied to them that the plaintiff had committed a crime). Accordingly, the trial court did not err in denying Appellant's request for judgment n.o.v. as to defamation.

Finally, we note Appellant contends that, assuming, *arguendo*, the evidence was sufficient to support the jury's verdict for defamation, there is

insufficient evidence to sustain the jury's verdict for tortious interference with contact.[9]  In this vein, Appellant avers that, since Erie paid Appellee's insurance claim, there is no evidence that his defamatory statement caused Appellee any actual damage.  Accordingly, Appellant suggests he is entitled to judgment n.o.v. as to Appellee's tortious interference with contract claim.[10]

> We have explained that a party is liable for pecuniary loss due to tortious interference with a contractual relationship when the party "intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract...." **Walnut St. Assoc., Inc. v. Brokerage Concepts, Inc.,** 982 A.2d 94, 98 (Pa.Super. 2009), *aff'd,* 610 Pa. 371, 20 A.3d 468 (2011)....[The] elements of tortious interference with a contractual relationship…are as follows:
>
> > (1) [T]he existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or

---

[9] Appellant sufficiently presented this claim in his post-trial motion and Pa.R.A.P. 1925(b) statement.  We note with displeasure, however, that Appellant neither included this issue within his "Statement of Questions Involved" nor in a separately headed argument section of his appellate brief. **See** Pa.R.A.P. 2116, 2119.  However, since Appellant's briefing failures do not impede our meaningful review in this case, we shall review the merits of the issue as presented in the argument portion of his brief.

[10] He also suggests that, assuming, *arguendo*, the evidence was insufficient to sustain the jury's verdict for defamation the evidence was likewise insufficient to sustain the jury's verdict for tortious interference with contract, which was based upon the alleged false and defamatory character of the communication complained of.  Accordingly, Appellant seeks judgment n.o.v. as to Appellee's tortious interference with contract claim on this basis as well.  As indicated *supra*, we find no merit to Appellant's challenges to the jury's verdict regarding defamation, and therefore, we need not address this claim further.

- 14 -

justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

***Empire Trucking Co. v. Reading Anthracite Coal Co.***, 71 A.3d 923, 932-33 (Pa.Super. 2013) (quotation and citation omitted).

Here, viewing the evidence in the light most favorable to the verdict winner, Appellee, we conclude the jury could reasonably find Appellee suffered "actual damage" as a result of Appellant's defamatory statement, notwithstanding the fact Erie eventually paid out on Appellee's insurance claim.

For instance, Mr. Gremminger testified Erie delayed paying on Appellee's insurance claim and conducted a full fraud investigation due to Appellant's statements, which included the statement Appellee was "a liar who could not be trusted." N.T., 6/19/19, at 78, 86-87. As part of this investigation, Appellee was required to drive "fairly far" to Media, Pennsylvania, to meet with Mr. Carlin. ***Id.*** at 49.

Further, Appellee testified that, after the meeting with Mr. Carlin, she retained counsel to protect her interests with respect to her claim, which she made under her insurance policy. ***Id.*** at 52-53. She noted that, as part of Erie's fraud investigation into her claim, she had to produce documents "repeatedly," make several telephone calls, sit for a deposition at the behest of Erie, meet often with her attorney, and complete a questionnaire. ***Id.*** at

54-55. These efforts resulted in her taking time off from work and losing approximately $15,000.00 in income. *Id.* at 61.

Moreover, she noted the attorney's fees she incurred during Erie's fraud investigation (which occurred in response to Appellant's defamatory statement) were triple the amount of the loss she claimed under her insurance policy for the stolen items. *Id.* at 57-58. Appellee testified Erie did not conclude her claimed loss under the policy was legitimate until after she spent more than $40,000.00 in attorney's fees in connection with Erie's investigation. *Id.* at 58-59. Further, Erie did not actually pay out on Appellee's insurance claim under her policy until after Appellee filed the instant civil complaint in which she named Erie as a defendant.

Based on the aforementioned, we conclude the evidence sufficiently supports the jury's verdict that Appellee demonstrated actual damage resulting from Appellant's defamatory statement as is necessary for tortious interference with contract. *See Empire Trucking Co.*, *supra*. Accordingly, we find no merit to his claim that the trial court erred in denying his request for judgment n.o.v. as to Appellee's claim of tortious interference with contract.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/11/2020</u>